María Pontón Ramos et al., Plaintiffs and Appellees, *v.* Succrs. of Huertas González, Defendant and Appellant.

No. 5092. Argued May 2, 1930.—Decided July 8, 1931.

512

*José C. Jusino* for appellant. *José Martínez Dávila* and *F. Rodrí-guez Alverio* for appellees.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

María Pontón Ramos and her husband, Luis Santiago Rivera, brought this suit against the commercial partnership of Successors of Huertas González, of Toa Alta, and prayed the court to decree the annulment of a certain mortgage foreclosure proceeding taken by the defendant firm against the plaintiffs, and to adjudge the former to pay to the latter twenty thousand dollars as damages, with costs.

The defendant filed a demurrer and an answer to the complaint. It admitted certain facts and denied others and set up several counterclaims.

The case went to trial. Considerable evidence, both oral and documentary, was introduced, and the court finally rendered a judgment decreeing the nullity sought and ordering the return of the foreclosed property together with its fruits and rents or, if such return could not be had, the delivery of its value and of the actual damages sustained to the amount of $7,500. The court further adjudged the defendant to pay to the plaintiff $4,500 as compensation for mental pain and suffering sustained by the plaintiffs by reason of the foreclosure of their property at the instance of the defendant. In regard to the counterclaims, it decreed that the loan should continue in force secured by the $4,500 mortgage, plus interest thereon at the established rate from June 20, 1927, and the $500 stipulated for costs in case

of execution. The court imposed the costs of the litigation on the defendant.

The defendant, feeling aggrieved, took the present appeal and assigned in its brief thirteen errors which it argued at length.

The first four relate to preliminary questions and are alleged to have been committed by the court: the first, in denying the motion to strike out; the second, in overruling the demurrer for insufficiency; the third, in denying the motion for a continuance, and the fourth, in refusing to strike out certain particulars from the demurrer and answer to the counterclaim.

In regard to the first assignment, it will be sufficient to state that the defendant was perhaps somewhat in the right in moving to strike out certain parts of the complaint; but as no prejudice has been shown, the error, if any, is not ground for reversing the judgment.

In support of the second assignment the appellant states that "the right of the plaintiff, once the nullity of the proceeding is declared, is clearly established in our Civil Code," and it adds that, such being the case, the plaintiffs should have exercised the action of revendication; and that as the complaint failed to contain the necessary allegations for such an action, it does not state facts sufficient to constitute a cause of action. To this the appellees answer in their brief, and we think rightly, as follows:

"The present is not nor could it be a revendicatory action. It is simply an action for damages based on the nullity of certain proceedings; on the malicious falsity of certain allegations in the initial petition and in regard to the certainty and amount of the debt claimed, as well as its maturity. (Articles 169 and 175 of the Mortgage Regulations.)"

A recital of all the details relating to the motion for a continuance of the trial would unnecessarily lengthen this opinion. It will be sufficient to say that the court does not appear to have abused its discretion, and that the trial itself

showed that the defendant was prepared therefor without any prejudice being inflicted upon it. This assignment is without merit.

The fourth assignment is also without merit, and what we have said in regard to the first also applies.

The fifth and sixth assignments refer to errors in connection with the admission of the evidence.

It is maintained by the fifth that the court erred in allowing the introduction in evidence of the whole record of the foreclosure proceeding whose nullity was sought and not certain portions thereof. The better practice is the specific presentation of particular portions, but in a case like the present one the court was perhaps placed in a better position to act by being able to examine the whole record. There was no error in such admission.

Nor can the sixth error be considered as reversible. It was assigned thus: "The court erred in refusing to admit evidence in regard to the terms of the mortgage contract other than the contract itself." At first view, this appears to be serious. But after examining the record it turns out that what happened was that while on the stand plaintiff Luis Santiago was asked: "Do you remember the terms of this contract? What were your obligations under the same?" He was allowed to answer as follows, over the objection of the defendant: "To pay the interest annually." The defendant insisted, and the court said:

"The attorney has already explained. The Law of Evidence can not be so strict as to refuse to allow the party to put those questions; the party should be permitted some latitude and the witness has already stated that he undertook to pay the interest annually. Of course, the court would reject a clause not contained in the contract; it would be inadmissible."

The defendant, through its attorney, answered thus:

"We objected so that the record should not be filled with superfluous matter."

The seventh and eighth assignments go to the merits of the case. The appellant claims that the trial court erred in finding that it had been shown that interest on the mortgage for the year 1926–1927 had been paid at the time of the foreclosure, and in holding that the service of the formal demand for payment (*requerimiento*) in a foreclosure proceeding can not be made by a private person.

For a proper understanding of the questions raised, it becomes necessary for us to state the substance of the facts involved.

The plaintiffs, who are the owners of a property of 73 acres, borrowed from the defendant the sum of $4,500, and to secure the loan together with $500 for interest, expenses, and costs in case of judicial action, they mortgaged the property by a public deed executed in Comerío on August 20, 1924.

In December, 1927, the defendant applied to the District Court of San Juan for a foreclosure of the mortgage, and alleged that the interest had remained unpaid since June 30, 1925, and that the mortgage debt was due. They prayed for an order directing that formal demand for payment of the mortgage within thirty days be made upon the debtors, with the statutory warning. The clerk issued the proper writ which was served by Ramón Coto, a person other than the marshal. The statutory period having expired without the payment being effected, a sale at public auction was ordered in which the property was awarded to the defendant herein.

The plaintiff maintained that the foreclosure proceeding was void on several grounds. We will only mention those which the district court considered sufficient for decreeing the nullity. They were two. Referring to the first, the court in its statement of the case and opinion says:

"It is prayed for the 'nullity of the foreclosure proceeding, because the initial petition contains false allegations in regard to the

maturity of the loan and the amount due, and hence the court lacked jurisdiction in the premises by reason of the subject matter of the action.' In order to discuss this ground of nullity, we must necessarily have recourse to the original record of case No. 5759, Succrs. of Huertas González v. María Pontón Ramos and Luis Santiago Rivera, a mortgage foreclosure proceeding, which was offered in evidence in its entirety by the plaintiff (Exhibit A). In the fourth paragraph of the complaint it is textually said:

" 'Fourth: It was agreed and it is so recorded in the registry of property that the default in the punctual payment of the stipulated interest or of any of the annual instalments of one thousand two hundred and fifty dollars agreed, would be ground for the mortgagee to consider the entire mortgage debt as due and to proceed to foreclose the same in the usual manner provided by sections 128, 129, and 130 of the Law.'

"From an examination of the deed which is attached to the record of said proceeding, it really appears that the above is not what was agreed between the parties when executing the said instrument. No stipulation is found to the effect that the whole obligation would mature by reason of the nonpayment of any of the annual instalments when due, although it was agreed that default in the payment of the interest would render the mortgage due, and that thereupon the mortgagee could proceed to foreclose it. The plaintiffs charge the defendant with malice and bad faith for having made such allegations and, in that connection, they insist that it further appears from the fifth paragraph of the complaint that the plaintiffs considered as due the first instalment of the principal, and, likewise, the interest instalments payable respectively on June 30, 1925, and June 30, 1926, because in neither case the amount had been paid, whether totally or partially. However, the evidence introduced at the trial shows differently. It appears from the defendant's own evidence that the interest had been paid up to 1926, and this is openly in conflict with the averments set forth in the fifth paragraph of the complaint in foreclosure. The payment by the plaintiffs of the interest on the mortgage for the year 1927 was also shown to the satisfaction of the court (Exhibits B and C).

"So that this can not be considered, as claimed by the party, as an immaterial error not affecting at all either the foreclosure proceeding or the interest of the mortgagor. On the contrary, it is really a grave error, since it consists in the statement of false and inexistent facts at the time of the filing of the complaint in the foreclosure proceeding. Said complaint was filed on December 23,

1927, that is, at a time when the loan secured by mortgage had not yet become due. The principal amount of $4,500 had to be paid by annual instalments of $1,250 each, the first to fall due on June 30, 1925, and the last instalment clearly becoming due on June 30, 1928, or six months after the complaint in the foreclosure proceeding was filed. It was not agreed, as the defendant claims, that upon default in the payment of one of the instalments of principal, the whole debt would become due. If a stipulation to that effect did not appear in the deed—as in fact it did not—the mortgage creditor could not alter the terms and conditions thereof and declare the mortgage to have become due at the time and in the manner chosen by such creditor, but only when the terms of the contract had not been complied with by the debtors.''

Referring to the second ground it says:

"Another ground for nullity urged by the plaintiffs is that the demand for payment was not served by the person designated by the court, which therefore acquired no jurisdiction of the defendants. Indeed, there appears in the record of case No. 5759 of this district court an order signed by Judge Berga in which it is recited that in view of the complaint filed in the foreclosure proceeding and of the documents exhibited therewith, and it appearing that compliance has been had with the requisites and formalities prescribed by the Mortgage Law and the Regulations, the court decrees and orders that the defendants be required to pay to the plaintiff, within 30 days from the service of the demand for payment, the sum claimed in the complaint in the foreclosure proceeding; and that they be cautioned that in case of failure so to do the mortgaged property shall be sold at public auction. The order concludes as follows: 'and for this purpose a writ shall be issued to the marshal for the execution of the above.' It appears from the same record that the writ was not directed to the marshal for the execution of the order of the court but that this part of the order of the judge was omitted and the writ was thus served by one Ramón Coto, with Juan E. Ademas, I. P., appearing as a witness on the return.

"We agree with the defendant that the demand for payment is not directed to the marshal but to the debtor. We can not, however, agree that this specific demand prescribed by section 128 of the Mortgage Law can be served by compliance with section 92 of the Code of Civil Procedure. The defendant confuses the provisions of article 168 of the Mortgage Law Regulations, which is related to

article 228 thereof, with the requirements as to process in an ordinary action. There can not possibly be any confusion.

"The question is an interesting one. We have searched for precedents as far as possible within the time at our disposal for the consideration of these matters, and it does not appear that this question has been decided by our Supreme Court. The case of Isaach v. Del Toro, 33 P.R.R. 959, does not settle it. It is true that in the cited case the return was made by a private person, but this point was not assigned as error and the Supreme Court was not in a position to pass upon it. There the error assigned by the appellant referred to the nullity of the return to the writ demanding payment by reason of defects in the affidavits of service. But that is not the question for decision in the instant case. As we have already noted, the judge of this court directed the clerk to issue a writ to the marshall for the latter to serve the process demanding payment. This was not done . . . The special proceeding for the foreclosure of a mortgage continues in force as to the first part thereof, up to and including the service of the demand for payment on the debtor, although it has been repealed as regards the sale of the mortgaged property which must fully conform to the provisions of the Act of March 9, 1905, relating to judgments and the manner of satisfying them. Giménez et al. v. Brenes, 10 P.R.R. 124; Marxuach v. Tous Torres et al., 30 P.R.R. 464. Upon the filing of the initial petition together with the proper documents in a mortgage foreclosure proceeding, the judge issues a writ: A mandate issued by a judge directed to an officer under him to perform and execute what he is thereby ordered to do. In other words, the mortage creditor appears by a formal application in writing to the judge and sets forth therein all the requisites prescribed by article 169 of the Mortgage Law Regulations, whereupon the judge delegates his authority to the marshal of the court as its executive officer so that the latter in the name of the court make demand upon the defendant to perform the command of the writ, namely, the payment of the obligation within 30 days. This is done in this way because, as the defendant is not present and the order of the court amounts to a judgment, such demand must be clothed with some degree of formality in order to distinguish it from a mere summons to appear and answer a complaint. A summons can not have the scope pertaining to a writ demanding payment. A summons is simply a notice to the defendant that an action has been brought against him and to appear and answer. The judge does not order this notice to be served. The plain-

tiff may serve it within one year from the filing of his complaint. The writ provided by article 170 must be served immediately. It is a summary proceeding. The writ demanding payment implies an authoritative warning, since if the defendant fails to comply with the command of such writ, the court may, without further proceeding, order the sale at public auction of the mortgaged property.

"Such commentators as we have consulted tell us that in Spain the demand used to be served either through a notary or through an actuary (*actuario*), and the latter term included both recording clerks and secretaries of municipal courts (*juzgados municipales*). In Puerto Rico, this class of officers is unknown to our procedural law; but by statute there has been established the office of marshal, who is liable for the nonperformance of the duties imposed on him. So that, harmonizing the provisions of the Mortgage Law with the new provisions of our statutes in force, we must reach the conclusion that the demand for payment mentioned in the Mortgage Law must, in the absence of the office of actuary in Puerto Rico, be served by the marshal of the district court and not by a private person. Besides, in the case at bar it does not appear that any demand for payment has been served, as it is not sufficient to state that the execution debtor was served with a copy of the complaint and a copy of the summons, without stating that he has also been served with copies of the other papers exhibited with the initial petition."

We entirely agree with the trial court in its weighing of the evidence, and in its reasoning and conclusions of law on both of the questions stated. In connection with the second, this Court recently held, in *González* v. *Registrar,* 39 P.R.R. 753, that "as the demand for payment in a mortgage foreclosure proceeding is a judicial act emanating directly from the judge or court, it should be served by an officer of the court."

The above ruling decides against the appellant the ninth error alleged to have been committed by the court in denying its motion for a nonsuit.

By the tenth assignment an important question of law is raised. The assignment is formulated thus: "The court erred in adjudging the defendant to pay damages for mental suffering."

The trial court in its opinion expressed itself as follows:

"As to the mental suffering we think that the provisions of section 1803 of the Civil Code authorize us to grant compensation for any damage caused. The legal precept is clear. Any person who by an act or omission causes damage to another by his fault or negligence shall be liable for the damage so done. Such damage must be the natural consequence of the act or omission that originates or causes it. The law protects any person who, without due process of law, is deprived of his property, and authorizes him to demand the annulment of the judicial proceeding whereby he was prematurely or improperly deprived of his property. If as a natural consequence of such deprivation material damage is caused together with mental pain and suffering, and there is proof of such injury, we think that the same can and must be compensated in accordance with the provisions of section 1803 of the Civil Code. Only in that way, by a liberal construction of the provisions of the substantive law, can there be protection in all new cases that may arise by reason of the unavoidable laws of progress.

"There can be no doubt that the institution of the foreclosure proceeding was a willful act on the part of the defendant. The latter was the actor in a proceeding which the plaintiffs were powerless to defend. The occurrence which was the direct cause of the damages clearly arose from the acts of the defendant. Such acts have caused damages; which include not only those of a material nature but also those consisting in the mental pain and suffering sustained when one is deprived of his property and is called upon to discharge an obligation that has not matured and in a proceeding which one can not defend."

It seems advisable to add that in the preceding paragraph of its opinion the trial court considered the evidence regarding the damages alleged to have been caused to other property of the plaintiffs by reason of the mortgage foreclosure proceeding, and concluded that it did not contain sufficient elements to justify their allowance.

We have carefully studied the question and in our judgment the district court decided it erroneously. It matters not that the complaint was entitled "for the annulment of foreclosure proceedings, other particulars, and for damages." The action available to the plaintiff is that

established by section 169 of the Mortgage Law which binds the execution creditor to compensate the debtor or parties in interest for any damages caused to them by reason of malice or negligence in the faithful statement of the facts; and such damages are those prescribed in section 1270 of the Civil Code, that is, the restoration of the thing which has been the subject-matter of the contract together with its fruits, and of the price, together with interest thereon; or others of a like character. To apply to the instant case the provisions of section 1803 of the Civil Code would be to disregard its proper scope. See the decision of this Court in *Arvelo et al.* v. *Banco Territorial y Agrícola,* 29 P.R.R. 996.

The 11th, 12th, and 13th errors assigned are, to our mind, nonexistent. We think that the other counterclaims were properly denied; that it has not been shown that the court abused its discretion in imposing costs on the defendants; and that the judgment appealed from is not contrary to law, save the pronouncement therein relating to the allowance of damages for mental suffering.

The judgment appealed from must be modified by eliminating therefrom the allowance of $4,500 as compensation for mental pain and suffering sustained by the plaintiffs by reason of the foreclosure of their property by the defendant; and, as so modified, affirmed.